IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BALTIMORE,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER HAGGINS<br><br>    Defendant. | Case No. 1:10-cv-00931 LJO JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 30) |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. In this case, Plaintiff alleges that on October 22, 2009, Defendant subjected him to excessive force in violation of the Eighth Amendment. (Doc. 1 at 3)

Before the Court is Defendants' Motion for Summary Judgment filed on April 19, 2012. (Doc. 30) Plaintiff filed his Opposition on May 1, 2012. (Doc. 32) and Defendants have replied. (Doc. 33). After reviewing the arguments and evidence presented by both parties, it is recommended that Defendant's motion be **DENIED**.

**I.    SUMMARY JUDGMENT STANDARDS**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate

1

when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 587. The party is required to tender evidence specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. Id. at 586 n.11; Fed. R. Civ. P. 56(c). In addition, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

///

///

## II.  FACTUAL BACKGROUND

On October 22, 2009, Defendant removed Plaintiff from the shower cell after he completed his bathing activities.[1] (Doc. 31-1, Fact 10) To do this, Defendant required Plaintiff to back up to the cell door and insert his hands through the cell opening. Id. At the time, Plaintiff was dressed only in boxer shorts and "flip-flop" shower shoes. (Doc. 32 at 9)[2] Defendant handcuffed Plaintiff in preparation for return to his housing cell.

After he was removed from the shower cell, Plaintiff asserts that he asked Defendant if he could get a book, which are lent to the inmates from the "book table," but Haggins said "no." (Doc. 32 at 8) Plaintiff informed Haggins the policy of the building allowed the inmates to borrow books to read. Id. In response, Haggins drew back his baton as if to strike Plaintiff and asked, "Are you resisting?" Id. at 9. Plaintiff told Haggins, "No, I only want a book." Id. Around this time, correctional officer Marshall arrived and told Plaintiff that he could get a book later and asked him to return to his cell. Id.; Doc. 31-1, Fact 15. Plaintiff complied. (Doc. 32 at 9) Unbeknownst to Plaintiff, the officers were needed to report to the cell of another inmate who was refusing to return his food tray and Haggins did not have the time to allow Plaintiff to select a book. (Doc. 31-1, Fact 14.)

At his cell door, Plaintiff claims he told Haggins to let go of his arm. (Doc. 32 at 9) In response, Haggins jerked Plaintiff back out of the cell and struck Plaintiff's leg with a baton. Id. Plaintiff fell to the ground and Haggins struck him "5 to 7 times on the shin area" and while doing

---

[1] The Court must draw all factual inferences in favor of Plaintiff. Celotex, 477 U.S. at 322.

[2] The Court recognizes that Plaintiff failed to respond to Defendant's separate statement of undisputed facts. However, the Rand notice given with the motion is insufficient. Rand v. Rowland, 154 F.3d 952, 955 (9th Cir. 1998) (notice must provide the pro se inmate "fair notice" of the requirements of Rule 56); Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (same); Woods v. Carey, 684 F.3d 934, 938 (9th Cir. 2012) ("Adequate fair notice required that the litigant be provided, in plain, understandable language, notice of his right to file counter-affidavits or other evidentiary material, that his failure to do so may result in summary judgment against him, and that his loss on summary judgment would terminate the litigation")

Though the Court considered issuing a proper *Rand* notice and allowing Plaintiff to file a supplemental opposition, in light of the material, disputed facts demonstrated by Plaintiff's declaration, doing so would only delay the progress of this case.

1  so, did not issue any orders to Plaintiff.  Id.  As a result of this incident, Plaintiff suffered injuries
2  due to being struck which required stitches.  Id.; Doc. 31-1, Facts 32-36.

### III. DISCUSSION

Haggins asserts he is entitled to summary judgment because he did not use any excessive force against Plaintiff and he is entitled to qualified immunity.

#### A. Eighth Amendment Claims

When a prison official uses excessive force against a prisoner, he violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir.2002). "Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). To make this determination, the Court may evaluate "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' . . . 'any efforts made to temper the severity of a forceful response'" and the extent of any injury inflicted. Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Haggins asserts that he is entitled to summary judgment because he used only that force necessary to address the recalcitrant Plaintiff.  However, the Court is required to interpret the facts in favor of the non-moving party. Celotex, 477 U.S. at 322.  Here, Plaintiff attests that he was not resisting Haggins and merely asked to obtain a book to read.  (Doc. 32 at 8) Plaintiff's evidence demonstrates that Haggins became irritated by Plaintiff's insistence that was permitted to have a book and then was annoyed further by Plaintiff's request that Haggins "let go" of his arm.  Id.  After this, Plaintiff attests that Haggins struck him repeatedly even after the handcuffed-Plaintiff was on the ground.  Id.

Defendant counters by relying on his own declaration and that of other officers. (Doc. 33 at 2)  Nevertheless, though Haggins describes a situation in which force may have become necessary, he fails to meet his burden of establishing that the initial use of force was justified. For example, he attests that when he and Plaintiff arrived at the cell, Plaintiff took a step toward the cell and then broke free of Haggins' grasp and turned "aggressively" toward him. (Doc. 30-2

4

at 3) Haggins does not describe what Plaintiff did that made it appear to him that Plaintiff was acting "aggressively."[3] Id. Likewise, though he reports that he believed Plaintiff intended to assault him when Plaintiff broke free of his grasp (Id. at 4), Haggins does not explain why he thought this, what Plaintiff did to make him think this or how an inmate who is handcuffed behind his back, wearing only boxer shorts and plastic "flip-flops" posed a risk to him. Also, Haggins' does not explain why, after he had re-taken Plaintiff's arm, he believed Plaintiff was not within his control—despite that this was the same measure of control Haggins exercised when he led Plaintiff to his cell. Id. Finally, he does not explain why he struck Plaintiff the first time without allowing him to comply with the order to "get down."[4] Id.

More importantly, though the Court is mindful that Defendant's evidence is consistent that Plaintiff broke free from Haggins' grasp and turn toward Haggins, the Court is not entitled to determine that this version of the facts is correct and Plaintiff's version is not. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997) ("We do not weigh the evidence or determine the truth of contested matters; we look only to whether a material factual dispute remains for trial."). Thus, considering the evidence in favor of Plaintiff, the Court concludes there are questions of fact regarding the necessity of the use of force. Likewise, considering Plaintiff's version of the facts, the Court cannot conclude that the force was used to restore order. The law is settled that using force on a compliant and restrained inmate violates the contemporary standards of decency (Hudson v. McMillian, 503 U.S. 1, 9 (1986)), even where there was only moderate and temporary resulting injury. Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (excessive force standard examines de minimis uses of force, not de minimus

---

[3] Defendant seemed to argue in his motion that Plaintiff's status as a Nazi Low Rider should figure into the Court's analysis. In doing so, he failed to note that Plaintiff is placed in Ad. Seg. because he renounced membership in this gang in 2007, has been "validated as a dropout of the NLR" and "has been discipline free since 2000." (Doc. 32 at 42) Moreover, there is no evidence that Haggins acted *because* he knew of Plaintiff's past gang association or, even that he knew about it at the time of these events. Indeed, despite the position he takes in his motion, when confronted by the fact of Plaintiff's good conduct since 2000, Haggins argues in his reply brief that Plaintiff's past conduct is "immaterial" to the questions presented. (Doc. 33 at 4)

[4] Haggins' declaration asserts, "I took a side step to the left, reapplied my grasp to Baltimore's right bicep with my left hand, ordered Baltimore to get down, and then struck Baltimore once with my MEB, using a forward strike to the upper right leg." (Doc. 30-2 at 3) Haggins does not say that Plaintiff refused to comply with the order to "get down" or that there was any measurable amount of time that passed after giving the order and Haggins striking him with his baton.

injuries).[5]

### B. Qualified Immunity

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

The threshold inquiry is whether the facts alleged, when taken in the light most favorable to the plaintiff, show the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If there is a constitutional violation, "the next sequential step is to ask whether the right was clearly established." Id. Finally, the right must be so "clearly established" that "a reasonable official would understand that what he is doing violates that right." Id. at 202; *see also* McDade v. West, 223 F.3d 1135, 1142 (9th Cir. 2000) ("The test for qualified immunity is: (1) identification of the specific right being violated; (2) determination of whether the right was so clearly established as to alert a reasonable officer to its constitutional parameters; and (3) a determination of whether a reasonable officer would have believed that the policy or decision in question was lawful").

Defendant argues he is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights or, alternatively, Defendant believed his conduct to be lawful. (Doc. 44 at 11). However, it is well-established that a prison official may not use force on a compliant inmate. LaLonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir.2000) (use of force on a person after surrender constitutes excessive force). As explained above, the facts viewed in the light most favorable to Plaintiff demonstrate a violation of the Eighth Amendment.

---

[5] On the other hand, Plaintiff claims permanent injury to his thumb as a result of this incident. (Doc. 7 at 9, ¶¶19-20).

Given the factual disputes set forth here by both parties, the Court cannot determine the force used by Haggins on October 22, 2009 did not offend the Constitution; a jury may do so but the Court may not. Based upon the record before this Court, it is recommended that Defendant's motion based upon qualified immunity be **DENIED**.

## IV. RECOMMENDATION

Based on the foregoing, the Court recommends,

1. The motion for summary judgment be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be filed within fourteen days after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 23, 2012**              /s/ Jennifer L. Thurston
                                                UNITED STATES MAGISTRATE JUDGE