1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                         **EASTERN DISTRICT OF CALIFORNIA**

10

11  ROBERT BALTIMORE,                    ) Case No.: 1:10-cv-0931 – LJO – JLT (PC)
                                         )
12            Plaintiff,                 ) **ORDER ON MOTIONS IN LIMINE**
                                         )
13        v.                             ) (Docs. 57, 58, 81, 82, 83, and 84)
                                         )
14  CHRISTOPHER HAGGINS,                 )
                                         )
15            Defendant.                 )
                                         )
16  _____)

17        Before the Court are the motions in limine filed by Plaintiff and Defendant. (Docs. 57, 58, 81,

18  82, 83, and 84).  Each motion is addressed below.

19  **I.      Background**

20        The events at issue in this action occurred on October 22, 2009. (Doc. 1 at 3).  On that date,

21  Plaintiff alleges Defendant used excessive force on him as he was exiting the shower in handcuffs. Id.

22  At that time, Plaintiff claims he asked for a book and, in response, Defendant denied the request and

23  raised his baton to hit Plaintiff. Id.

24        Plaintiff alleges Officer Marshall intervened, and Defendant escorted Plaintiff back to his cell

25  without any problems. Id.  Once in the cell, Plaintiff asked Defendant to let go of Plaintiff's arm. Id.

26  Plaintiff claims that Defendant then struck Plaintiff with his baton and continued to strike Plaintiff

27  once he fell to the ground. Id.  Defendant denies all allegations. *See* (Doc. 15).

28

                                              1

II.     **Legal Standards**

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted).  Likewise, the Seventh Circuit found motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. *See* Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).  A court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).  Therefore, the Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712.

III.    **Plaintiff's Motion in Limine**

A.  **Motion to exclude testimony of Defendant's expert, Robert Borg (Doc. 81)**

Plaintiff requests the exclusion of defense expert Robert Borg's testimony. (Doc. 81).  Plaintiff requests, at a minimum, that the Court exclude Mr. Borg from testifying as to whether Defendant used excessive force against the Plaintiff. Id. at 3.  Plaintiff further argues that Mr. Borg's testimony does not concern specialized knowledge and will cause the jurors to substitute Mr. Borg's conclusions for their own conclusions. (Doc. 81 at 5, 7).

Fed. R. Evid. 702 governs the use of expert witnesses at a trial.  Specifically, Fed. R. Evid. 702 permits an expert, who is adequately qualified by his or her skill, training or education, to testify as to his or her opinion if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

1   Fed. R. Evid. 702.   The District Court possesses the unique role of determining the relevance and

2   reliability of an expert's testimony to ensure that the trier of fact reaches an unbiased decision.

3   Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002).

4          Fed. R. Evid. 704(a) permits opinion testimony which touches upon ultimate factual issues to

5   be determined by the trier of fact.   However, the Ninth Circuit has unequivocally determined that "an

6   expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue

7   of law."   Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)(*quoting*

8   Mukhtar, 299 F.3d at 1066 n. 10) (emphasis in original).   In an excessive use of force case, the

9   ultimate issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or

10  maliciously and sadistically to cause harm."   Hudson v. McMillian, 503 U.S. 1, 7 (1992).

11         Review of Mr. Borg's reports shows he intends to state opinions on ultimate *legal* issues; this

12  will not be permitted.   For example, Mr. Borg will not be permitted to state that Officer Haggins'

13  actions do not reflect an intent to do harm.   (Doc. 81-1 at 4)   Defendant's intent is a question for the

14  jury.   Likewise, the reasonableness of Defendant's actions, including the decision to use force, is a

15  topic for the jury and it is not for him to tell the jury how it should find.   "When an expert undertakes

16  to tell the jury what result to reach, this does not aid the jury in making a decision but rather attempts

17  to substitute the expert's judgment for the jury's."   United States v. Duncan, 42 F.3d 97, 101 (2nd

18  Cir.1994).

19         Mr. Borg may not opine as to any topics upon which he must speculate to support his opinion.

20  For example, Mr. Borg observes that Defendant would have violated a policy had he permitted

21  Plaintiff to have a leisure book.   He fails to cite to any evidence to support that had Plaintiff received a

22  book while under escort by Defendant that he would have exceeded the allowable number of books.

23  Similarly, he cannot opine any other person, including Mr. Marshall, for example, did not see or hear

24  the events they claim to have heard or seen.

25         Mr. Borg may not opine as to the credibility of any person.   That issue is solely within the

26  province of the jury.   In his report, Mr. Borg opines, among other things, that Plaintiff was

27  "misleading in his explanation of [the Leisure Library Policy] to Officer Haggins." (Doc. 81-1 at 7).

28  Mr. Borg next analyzes Plaintiff's deposition and opines that certain statements in his deposition

1  contradict statements Plaintiff made elsewhere. Id. at 8-11.  For instance, Mr. Borg noted that "[o]n

2  page 27 line 11, Plaintiff testified that when [he] got hit, he fell backwards and landed on his back.

3  That testimony is in conflict with his CDC 602 Inmate Appeal dated October 22, 2009…" Id. at 9.

4  Mr. Borg's opinion regarding the Plaintiff's credibility attempts to usurp the jury's role and is

5  absolutely improper.

6        Likewise, Mr. Borg cannot be used as a conduit through which otherwise inadmissible

7  evidence may be introduced.  For example, Mr. Borg has not expressed any opinions related to

8  Plaintiff's placement in the SHU but his report seems to indicate he intends to recite this history in

9  detail.  Thus, because Mr. Borg has stated no opinion related to Plaintiff's placement or retention in

10  the SHU, his gang validation or his drop-out status or any of the information beginning at the last

11  paragraph of page 5 of Borg's report through the second paragraph of page 6, he will not be permitted

12  to describe this evidence in his testimony.  In addition, Mr. Borg opines that "[a]t no time do the

13  medical records indicate Morphine was prescribed or administered." Id.  The Court is not aware of,

14  and Defendant has not so indicated, that Mr. Borg has received any medical training.  Thus, any

15  opinions interpreting Plaintiff's medical records lie well-beyond the scope of Mr. Borg's

16  qualifications.

17        On the other hand, Defendant avers that Mr. Borg's report contains extensive discussion of

18  CDCR policies and procedures. (Doc. 85 at 3).  At this time, the Court cannot determine whether the

19  content of these policies or their meaning require specialized information beyond the knowledge of the

20  common juror.  Likewise, at this stage, the Court cannot determine how the policies are relevant or,

21  even, if they are.

22        Accordingly, Plaintiff's motion to exclude the testimony of Defendant's expert, Robert Borg,

23  (Doc. 81) is **GRANTED IN PART**.  In addition, at trial Plaintiff may renew his request to exclude

24  Mr. Borg's testimony and/or for a Daubert hearing outside the presence of the.

25       **B.  Motion to exclude evidence of Plaintiff's convictions or criminal record (Doc. 82)**

26       Plaintiff requests the Court to preclude any reference to his "convictions, criminal record or

27  past gang affiliation." (Doc. 82 at 2).

28  ///

4

### i.   Criminal conviction

Whether evidence of a conviction will be admitted is governed by Federal Rules of Evidence 609.  Evidence must be admitted, pursuant to Fed. R. Evid. 403 in civil cases in which the witness is not the defendant and where the conviction was punishable by more than one year in prison. Fed. R. Evid. 609(a)(1)(A).  Generally, a conviction will not be admitted if more than 10 years have passed since the time the witness was released from confinement on the charge.  However, the 10-year presumptive bar does not apply if the witness remains in custody for the charge at issue.  Nevertheless, in either situation, a conviction may not be admitted if its probative value is outweighed by its prejudicial effect. Fed. R. Evid. 609(b).

Plaintiff argues that his conviction does not pertain to whether Defendant used excessive force on him. (Doc. 82 at 3-4).  Plaintiff further avers that Plaintiff's conviction is presumptively inadmissible given that Plaintiff's conviction occurred over 14 years ago. Id. at 7.  Defendant counters that a conviction is not remote if less than ten years have passed since the release from prison for a conviction. (Doc. 86 at 5).  The Court finds the "presumption of inadmissibility" inapplicable in this situation given that Plaintiff remains − to the Court's knowledge − in custody for the felony for which he was convicted.

Given that the credibility of all the parties and witnesses is a significant issue in the case, the Court does not find the prejudicial effect posed outweigh the probative value regarding his conviction.  Thus, Plaintiff's motion (Doc. 82) is **DENIED IN PART**.  Moreover, Defendants stipulate that they will "introduce only the fact that [P]laintiff is a convicted felon." (Doc. 86 at 2).  Therefore, Defendant may only introduce evidence that Plaintiff is a convicted felon and such evidence will be admitted for the **limited purpose of impeachment**.  The name or nature of the underlying felony **SHALL NOT** be introduced.

### ii. Gang Affiliation

Plaintiff also requests preclusion of any reference to Plaintiff's former membership in the Nazi Low Rider ("NLR") gang. (Doc. 82 at 7).  Plaintiff explains that he renounced his affiliation with the NLR "years ago." Id.  He further explains that he was "validated as an NRL dropout on September 14, 2010." Id.  Notably, however, Plaintiff omits to discuss whether he was an active NRL member at the

1    time of the October 22, 2009 event.

2         Defendant counters that Plaintiff's gang affiliation is relevant to the "threat reasonably

3    perceived by the [D]efendant" at the time of the October 22 incident. (Doc. 86 at 2- 4).   Defendant

4    submits that as an African-American officer, he was aware of Plaintiff's affiliation as a NLR member.

5    Id. at 2.   Defendant further points to the fact that Plaintiff was "covered with tattoos tantamount to

6    swastikas" as evidence of Plaintiff's gang membership. Id.   Defendant omits to explain whether these

7    tattoos had any effect on his perception that Plaintiff posed a threat to Defendant during the October

8    22 incident.

9         The threat Defendant reasonably perceived, if any, from Plaintiff's former gang affiliation

10   during the October 22 incident is highly relevant to the determination of whether Defendant used

11   excessive force.   However, Defendant provides little information as to what he actually knew of

12   Plaintiff before his contact with him or what he actually perceived during October 22 incident and

13   what affect, if any, Plaintiff's tattoos had upon him.   Absent a showing, outside the presence of the

14   jury, that Defendant had prior knowledge of Plaintiff's gang affiliation before the incident, evidence of

15   Plaintiff's gang affiliation **SHALL NOT** be admitted.

16        **C. Motion to allow Plaintiff and Mr. Owens to appear in civilian clothes (Doc. 83)**

17        Plaintiff requests that the Court permit him and Mr. Owens to appear at trial in civilian

18   clothing. (Doc. 83 at 3).   He argues that requiring inmate witnesses to appear in prison uniform would

19   "severely and unduly prejudice the jury against Plaintiff and Mr. Owens." (Doc. 83 at 3).   Plaintiff

20   further requests that the Court adapt the principle of U.S. v. Olvera, 30 F.3d 1195, 1196 (9th Cir.

21   1994) ("Compelling a defendant to appear at trial in prison garb is impermissible because the constant

22   reminder of the defendant's incarcerated status may affect jurors' perception of him or her as a

23   wrongdoer.") in the civil context. Id. at 4.   Plaintiff concludes that requiring Plaintiff and Mr. Owens

24   to wear prison clothes creates an "unjust presumption" against their credibility. Id.

25        Defendant states that he "might agree to [Plaintiff's] request, provided that [P]laintiff is

26   shackled at the ankles to the cement bucket under counsel table." (Doc. 87 at 2).   Defendant, on the

27   other hand, avers that Mr. Owens should be shackled because he is a "percipient witness" and has

28   "noted ties to white supremacy gangs." Id. at 2.   Defendant appears to believe that dressing the

1 inmates in civilian clothing could somehow enhance their chance of escape. Given that these inmates

2 will be under constant surveillance by the CDCR and the U.S. Marshals, Defendant's argument is

3 unconvincing.

4      Plaintiff and Mr. Owens will be permitted to wear civilian clothing at trial. Therefore,

5 Plaintiff's motion (Doc. 83) is **GRANTED.** Neither the Court nor Defendant's counsel shall be

6 responsible for providing the civilian clothing. Plaintiff's counsel **SHALL** contact the U.S. Marshals

7 Service in advance of trial for instructions regarding allowable clothing and for details as to when the

8 clothing must be provided and how.

9      **D. Motion to exclude evidence of inmate witness convictions or criminal record (Doc. 84)**

10      Plaintiff seeks to exclude evidence of Mr. Owens' conviction and criminal record on the same

11 grounds he seeks to exclude evidence of his own conviction and criminal record. *Compare* (Doc. 84)

12 *with* (Doc. 82). Plaintiff makes no reference to Mr. Owens' purported gang affiliation. *See* (Doc. 84).

13      Defendant stipulates to "not [] introduce evidence regarding the specific felonies, admitting

14 only the fact that Owens has felony conviction(s)." (Doc. 88 at 2). However, Defendant qualifies this

15 stipulation. Id. Defendant requests that the Court permit reference to Mr. Owen's specific felonies in

16 the event the proverbial "door is opened" or in order to show bias, if relevant. Id.

17      Once again, it is clear that the credibility of all the parties and witnesses is a significant issue in

18 the case. The Court does not find the prejudicial effect posed outweigh the probative value regarding

19 Mr. Owens' conviction. Thus, Plaintiff's motion (Doc. 84) is **DENIED**. Defendant may introduce

20 evidence that Plaintiff is a convicted felon and such evidence will be admitted for the **limited purpose**

21 **of impeachment**.

22      With regard to the issue of Mr. Owens' alleged gang affiliation, the Court notes that Plaintiff

23 is a NRL "drop out." (Doc. 82 at 7). Defendant indicates he may attempt to demonstrate Mr. Owens'

24 bias in favor of Plaintiff by demonstrating he was a fellow member of the NRL. However, while

25 Owens' relationship with Plaintiff is fair game, Defendant will not be permitted to introduce evidence

26 of Plaintiff's gang affiliation through this backdoor. Thus, Defendant **SHALL NOT** introduce this

27 topic absent a sufficient showing outside the presence of the jury that demonstrates Owens is or was a

28 member of the NLR gang and that he is biased in favor of Plaintiff thereby.

**IV.    Defendant's Motion in Limine**

      **A.  Motion to require Plaintiff to be shackled during trial (Doc. 57)**

      Defendant moves the Court for an order requiring Plaintiff to be shacked during trial. (Doc. 57).   Defendant cites Plaintiff's lengthy prison sentence – 28-year state term and concurrent 327-month federal prison term for gang-affiliated RICO violations – as evidence of the danger he poses. Id. at 3.  While Plaintiff is a dropout of the Nazi Low Rider gang, Defendant speculates that outside gang members may attend the trial. Id.

      Plaintiff argues that there is no need for the shackles exists as Plaintiff "is respectful, obedient and non-violent." (Doc. 91 at 2).   Plaintiff further argues that as recently as August 2, 2013, the Superior Court of California, San Bernardino County noted that the "Court District Attorney…[agreed] that Plaintiff would not pose an unreasonable risk of danger to public safety." Id. Plaintiff's counsel has attached a copy of the August 2, 2013 Minute Order from People v. Baltimore, Case No. FSB16211 for the purpose of demonstrating Plaintiff's good character to her declaration. (Doc. 92).[1]

      The Court will permit Plaintiff to remain at counsel table with his hands unshackled as long as his conduct warrants it.  His legs will be shackled in the manner approved by the USMS but they will be concealed behind the skirt of the table.  Therefore, Defendant's motion (Doc. 57) is **DENIED.**

      **B.  Motion to exclude "Code of Silence" and "Green Wall" arguments**

      Defendant seeks an order excluding any reference to the terms "code of silence" and "green wall." (Doc. 58).   Defendant indicates that while Plaintiff has not previously raised these claims, Defendant preemptively seeks to exclude reference to these arguments at trial. Id. at 3.   Defendant argues there is no evidence he is connected to any conspiracy of silence and introducing this evidence would be irrelevant and unfairly prejudicial at trial. Id.

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b); United States v. Bernal–Obeso, 989 F.2d 331, 333 (9th Cir.1993). The record of a state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n. 9 (9th Cir.1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n .1 (N.D.Cal.1978), aff'd 645 F.2d 699 (9th Cir.1981).

     In taking judicial notice of the San Bernardino Superior Court, Criminal Case No. FSB16211 order, the Court notes that Plaintiff's custody status has been labeled as "released from custody."  However, because the Court has not been notified otherwise, the Court presumes that Plaintiff remains in the custody of the state or federal authorities.

1    "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it

2    would be without the evidence; and (b) the fact is of consequence in determining the action."

3    Fed.R.Evid. 401.  Evidence that is not relevant is not admissible. Fed.R.Evid. 402.  Relevant evidence

4    may be excluded "if its probative value is substantially outweighed by the danger of one or more of

5    the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

6    or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

7    Here, the only issue the jury must decide is whether Defendant used excessive force on

8    Plaintiff in his cell.  Testimony or arguments regarding the "Code of Silence" or "Green Wall" would

9    have no pertinence in determining whether Defendant used force maliciously and sadistically for the

10   purpose of causing harm or in a good faith effort to restore order. Hudson v. McMillian, 503 U.S. 1,

11   6–7 (1992); Whitley v. Albers, 475 U.S. 312, 320 (1986).  Though Defendant may offer the testimony

12   of other officers on the scene, the fact that their versions disagree with Plaintiff's—assuming they

13   do—is insufficient to justify introduction of evidence that the testimony is due to a code of silence.

14   Plaintiff does not allege, and no evidence has been produced that the conspiracy described by the

15   "green wall" or the "code of silence" exists or that Defendant has any association with the any

16   conspirators.  Thus, the Court finds that the probative value of any reference to the "code of silence"

17   and "the green wall" would be substantially outweighed by the danger of unfair prejudice. Fed. R.

18   Evid. 403.

19   On the other hand, Plaintiff concedes that he does not intend to address the "code of silence" or

20   an "undefined conspiracy or cover up" in his case-in-chief. (Doc. 93 at 2).  Rather, Plaintiff requests to

21   elicit such testimony on cross-examination and possible reference during closing argument. Id.

22   Plaintiff further avers that evidence of the relationship between the officers may be relevant to the

23   credibility or bias of Defendant's witnesses. Id. at 2-3.

24   Plaintiff may argue that correctional officers who testify and support Defendant's version are

25   biased or are not truthful because of their work relationship or their friendship. In all other respects,

26   Defendant's motion in limine (Doc. 58) is **GRANTED**. There will be no testimony or argument

27   regarding the "code of silence" or the "green wall."

28   ///

**ORDER**

Accordingly, the Court **HEREBY ORDERS** that:

1. Defendant's motion to require Plaintiff to be shackled at trial (Doc. 57) is **DENIED**;

2. Defendant's motion to exclude reference to the "Code of Silence" and "Green Wall" (Doc. 58) is **GRANTED;**

3. Plaintiff's motion to exclude the testimony of Defendant's expert, Robert Borg, (Doc. 81) is **GRANTED IN PART and RESERVED IN PART;**

4. Plaintiff's motion to exclude reference to Plaintiff's conviction or criminal record (Doc. 82) is **DENIED IN PART;**

5. Plaintiff's motion to allow Plaintiff and inmate witness to appear at trial in civilian clothes (Doc. 83) is **GRANTED;** and

6. Plaintiff's motion to exclude evidence of inmate witness' conviction or criminal record (Doc. 84) is **DENIED.**

IT IS SO ORDERED.

Dated:   **August 30, 2013**              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

10